May it please the Court, Your Honor. My name is Jaime Haas and I represent the petitioner in this case, Mr. Alici Theagene. Although Mr. Theagene has presented meritorious contentions regarding a constitutional violation that occurred when the Board of Immigration Appeals reversed its prior decision to grant him protection under Article III of the Convention Against Torture, I believe it's important at this point to note that he was a citizen of the United States, and how does one acquire that status? Traditionally, one requires Can we reach this question? I'm sorry. Didn't he present this question to the IJ and not appeal it to the BIA? No. In fact, the questions that were posed during the immigration proceedings before the immigration judge were, in fact, was he a citizen of Haiti? It was never an issue as to whether or not he was a national of Haiti. So he did admit the fact that he was a citizen, and to the extent that it also indicates a native of Haiti, he interpreted that as absolutely, that is where he was from. In terms of whether or not he appealed that to the immigration or to even the Board of Immigration Appeals, that is, he did not. The issue of his nationality stems from the jurisdiction of this Court to determine its own jurisdiction, to determine whether or not this individual, Mr. Theagene, is in fact an alien or a national of the United States. But isn't the fundamental problem with Mr. Theagene's claim that he didn't apply for naturalization, how do you get over the hurdle that we've said that the minimal requirement is an application? Correct. In Hughes, a different panel of the circuit indicated that a minimum, the minimum requirements that he would have to make is following the naturalization application. Mr. Theagene, in fact, did not follow a naturalization application. The facts of his case are more specific. What Mr. Theagene did was voluntarily enlist in the U.S. Armed Forces during a time of war. He took the oath of allegiance as compared to the other cases which involved naturalization applications and simply signing an oath of allegiance, that this Court did, excuse me, a different panel of the circuit decided in Prodomo Cordea to be insufficient. So he voluntarily enlisted in the Armed Forces during a time of war. He took the oath of allegiance. He performed his duties honorably during a time of war, as was confirmed by his honorable discharge. But there's no case that says that that's enough, is there? No, Your Honor. This is the case in which the Court will make a determination as to whether or not military service, in fact, will be sufficient. And it's more than just military service. It is specifically tailored to the facts of his case. Does honorable military service ---- So any alien, any alien who joined the U.S. military and was honorably discharged would, by reason of that fact alone, become a naturalized citizen? You also have to include the fact that it was during a time of war, which is recognized by the President or by his executive order. Okay, during a time of war. Yes. Now, as I remember, Congress has passed statutes from time to time allowing naturalization of aliens who have joined the military during a time of war. Yes, Your Honor. The Court is correct, absolutely. Title VIII U.S. Code, Section 1440b1 actually says that an honorable veteran of the United States may be naturalized and become a citizen and thus also a national in the United States. They have to file an application. If he ---- of course. But the underlying requirement is that, of course, that he be honorably discharged and served during a time of war. Why doesn't your client file an application? Yes, Your Honor. Why hasn't he filed an application? That issue was actually before the district court in a lower proceedings. Rather than simply go in before the BCIS and file the application, he asked permission. He asked permission from the district court to declare his rights and allow him the opportunity to file his naturalization application. But he was too late, right? He was already an aggravated felon. Well, the interesting thing about the 1440b1 is that the law actually exempts military veterans from the effects of removal or deportation. So simply the fact that he's in removal ---- After they're naturalized. No. If the alien is, in fact, in removal proceedings or deportation proceedings and he receives a deportation order, the law still permits him to file his naturalization application and become naturalized. That's clearly stated in 1440b1. That is ---- So why didn't he do it here? That's why he's asking permission, because the government has opposed it. They said that he could not file his naturalization application. And rather than filing it, he decided to ask permission. And why did the government say it was the reason he couldn't file his? Because of the criminal activity, because of the actual aggravated felony. Well, couldn't he file it anyway and then they were just supposed to grant? Well, they ---- I don't ---- in light of the position of the service ---- Well, he could fill out the papers and file them in the appropriate office. And then the government could ---- Well, he filled out the paperwork. He attached it as an exhibit to submit it to the Court and said this is the application I'm ready to prepare just to tell me whether or not I can do this under 1440b1. As the government has strenuously opposed that application, filing it with the BCIS, the Bureau of Citizen and Immigration Service, would not be appropriate. They would not grant it. That's why he asked for permission or leave from the court, from the district court of Arizona, on that issue. Now, with respect to nationality versus naturalization, they are completely separate entities. Although an individual who is granted naturalization, thus citizenship, can become a national, not all nationals are citizens. The government has indicated that the Court should focus upon the actual specifics of the Immigration and Nationality Act. No court that I'm aware of that has dealt with the issue of nationality has ever been limited to the Immigration and Nationality Act to limit its scope. In fact, they have used the definition of national of the United States as founded in 8 U.S. Code 1101-822 to determine whether or not that individual has expressed his objectively indicated his permanent allegiance to the United States. So that's the question that becomes, how does the individual objectively demonstrate his allegiance to the United States? Cases have held, such as in the Fourth Circuit with Marin, that naturalization application is probably the most significant form of objectively demonstrating your permanent allegiance to the United States. Well, just recently in the, in Perdomo Padilla, the Ninth Circuit in a different panel indicated that wasn't enough. And in this case, I believe he has, that the facts demonstrate he has gone beyond simply filing an application for naturalization and signing an oath of allegiance that the, that a different panel of the circuit indicated that is prospective in nature. He did not simply file a naturalization application and sign an oath of allegiance that he would protect the United States or he would have permanent allegiance. He demonstrated this. As I remember from, I don't know that it is really critical, but I suppose it could be. As I remember from when I used to swear in New Citizens, it was a special oath that was different from the one that you signed to hold an office in the United States. It particularly included renouncing any allegiance to a foreign potentate. That is correct, Your Honor. As the government has indicated, the difference between the two oaths is, in fact, there is a renouncement in the oath for naturalization. Mr. Theogene took the oath of allegiance as part of the military code of, the military code which says that he owes allegiance to the United States but doesn't indicate that he renounces all other, all other countries. That is true. With respect to the facts in which Perdomo-Perdia indicated, they had great concern with the fact that the individual who claimed naturalization, excuse me, nationality, had filed a naturalization application and signed that oath of allegiance. That, the Court could not reconcile the fact that Congress did not intend to bestow certain benefits upon the applicant, such as exemption from deportation as it affects the naturalization application. Well, in this case, that concern is not there. In fact, there's a complete indication from Congress in enacting 1440b-1 that they specifically give the benefit to the military personnel to exempt them from deportation. Do you want to address your cat claim at all? Just briefly, I could, Your Honor. Yeah. I'm just wondering, does, do the facts of this case take Mr. Fijian outside the matter of J.E., given that he has served in the U.S. Armed Forces? Does that make it more likely that he'd be a specific target? That was argued in the Convention Against Torture Applications. Right. Absolutely. We argued before the immigration judge as well as the Board of Immigration And the history of Haiti indicates, of course, that the involvement of U.S. forces in Haiti actually probably caused a lot more severe damage to the country than what was supposed to benefit them. Is that supported by evidence in the record? It's, it was argued before in the transcripts. The transcripts are Is there any evidence, any State Department reports? Only the State Department reports were, were provided to the immigration court as well as the Board of Immigration Appeals. The Board, in fact, specifically looked at the arguments presented in the State Department reports, which indicates that upon his return to Haiti, he will be detained as a criminal deportee. And the situation that is, that is currently occurring in Haiti regarding the prison situations is clearly addressed in the State Department. But the matter of J.E. said that wasn't enough. There had to be some specific, something that was aimed specifically at him. Right, right. And the fact that they used matter of J.E. after they had previously granted the deportation, excuse me, the protection against, may I briefly conclude? Oh, please finish. Thank you. The Board granted him his application for protection under Article III. Then they reversed it after the government had filed a motion to reconsider. The motion to reconsider never addressed matter of J.E. because matter of J.E. was never cited until after the government had filed a motion to reconsider. So the Board uses matter of J.E. But did you get an opportunity to respond to the citation of matter of J.E.? Did you file an opposing brief before that? No, because the motion to reconsider never addressed matter of J.E. The motion to reconsider restated the same arguments that was on the original appeal. The motion to reconsider addressed no new arguments, no new law, and so there was no need to file anything addressing matter of J.E. Do you ever have the chance before the BIA to distinguish your situation from matter of J.E.? Not to say you can't apply it, but to say we're different. Well, that's what he is asking here is that if he is contending that the – it's essentially a violation of his constitutional rights to apply the new law without giving him that opportunity to tell him we're going to apply matter of J.E., distinguish it or – If you wanted to distinguish it, why didn't he file a motion to reconsider with the BIA? Quite candidly to the Court, the – Mr. Theogene is a – is in Federal detention in Eloy, Arizona. He has extremely limited resources available. We immediately filed a petition for review to secure his arguments before the circuit court. Filing the motion to reconsider after a motion to reconsider was not available means for him to argue before the Board of Immigration Appeals. Even though it appears now, based on changes in circuit law – in the circuit law of the Ninth Circuit regarding what exactly the government should be focusing on in terms of its specific intent, because the grounds in which the government was arguing in matter of J.E., as well as in Mr. Theogene's case, was that the government should not be held to a specific intent. They should not have strict liability as to what's occurring in the Haitian prisoners – Haitian prisons. Recent case law in the Ninth Circuit indicates that that's not true. All the government need is an awareness of what's occurring in the prison. So you're saying J.E.'s been questioned or – I believe based on Ninth Circuit law as it stands today, it is questioned. I don't know the effects or the status of matter of J.E. in terms of whether or not that counsel appealed J.E., but it appears based on current law that J.E. is challengeable. I'm confused about something that you started speaking to and then you moved away to a substantive issue. I'm confused about a procedural issue. We have a case called Castillo-Viagra v. INS from about 1992 or so. It holds that where on the petition for review from the IJ to the BIA, while that was pending, there was a regime change, and the BIA had denied relief because of the regime change without giving the petitioner an opportunity to address whether the regime change eliminated the need for asylum, that that denied the petitioner due process. Purely procedural. Yes, Your Honor. And I'm trying to figure out, does this case – I know this isn't precisely analogous, but I'm trying to find out whether this case falls within Castillo-Viagra on that procedural issue. Exactly what I was alluring to in the beginning when I indicated that there was a procedural violation is that he wanted – that Mr. Thiessen contends that his procedural due process were violated when he was not given an opportunity to contest the matter of J.E. before they reversed the decision to grant him protection against torture. Now, I think in Castillo-Viagra, the regime change occurred after the briefing to the BIA was done and the issue was submitted, but before the BIA issued its decision. In this case, the decision of the BIA had already been rendered. There was pending a motion reconsidered by the service, which I had indicated in the brief. It did not mention J.E. It didn't address it. It did not mention the matter of J.E. So you didn't have a chance to respond to that. Not in – and had the government actually indicated any new argument, any new law in its motion, absolutely, there would have been some response to how that new law or new argument affected this case. I'm just wondering – I'm wondering two things. I've tried – I've had my law clerks try to find out the subsequent history of J.E. and maybe the government can enlighten us, but it does seem a question of validity as a legal matter. I don't know if any circuit court has addressed it. So I would imagine you would have both a substantive challenge and then if there was going to apply J.E. to you, that you would want to be able to bring in evidence that you meet the standard of J.E. Yes. That's exactly what Mr. Thijen contends, is that he wanted that opportunity and the board didn't give it to him. That's the bottom line. The board issued a decision to apply new law to his case without giving him that opportunity. That's also assuming that the court believes that the actual motion to reconsider itself should have been grantable on procedural grounds. The question, we can't in this procedural posture address the question whether J.E. is good law. Correct. Correct. However, the court can in substance determine whether or not the evidence presented in this case amounts to a more likelihood than not standard that was achieved in the board's prior decision. If you had the opportunity to admit new evidence, do you think you could, I mean, is there other evidence that you could put in that might meet the standard of J.E.? I would certainly research and develop the issue that the court had indicated regarding his military service and more detail as to the effects of the U.S. involvement in Haiti prior, during the time in which there was the Haiti revolution. I'm just wondering what the current country condition report says. I cannot submit that to the court. I did not indicate one way or the other in which the country reports. That's not in the record. Correct. It didn't need to be.  Thank you, counsel. Thank you. Thank you, Your Honor. Michelle Slack for the Attorney General, John Ashcroft. There's essentially three categories of issues raised here. The first is a claim to non-citizen nationality, which is an attack on alienage. The second goes to the board's power to have actually entered this reconsideration decision. And finally, to the Convention Against Torture Relief. Counsel, let me ask you a question here. Sure. You know from the previous case you argued that I kind of worry when somebody gets hammered with something that he never had a fair chance to address. And I'm wondering why this isn't a Castillo-Viagra case. He loses because of J.E., but nobody ever briefed J.E. It just came out of the blue when the case was being argued on something else entirely. So he never got a chance to argue about why J.E. doesn't apply to him. I suppose his theory would be, well, maybe the prisons generally there aren't torture. It's just poor country trying to run a prison system. But former U.S. military are going to get a whole special category of beatings. Well, actually, I have several responses to your question, Your Honor. But I'd like to begin by addressing the whole not having an opportunity to brief J.E. Actually, J.E. came out after the government had already filed its motion. So it's not like the government never raised J.E., even though it was out there, and then the board picks up on J.E. and says, this is the conclusion we've reached. It was decided after the board, I mean, after the INS filed its motion. But it's a published decision, precedent-setting decision, en banc, mandatory controlling. And there was a month's period of time between when J.E. came out and when the board in this case actually made its decision. I mean, it's intervening authority that the board was obligated to follow. There isn't any due process requirement that a tribunal say, hey, we have to follow our mandatory controlling authority. Do you have any response to that? I mean, the fact that it's published gave Mr. Piagin notice. The part of your argument where you're saying the board says we have to follow our mandate, that's true. But he also has a factual argument that he comes within J.E. And given that it was a new law, shouldn't the proceeding have been a new law, which who knows if he was aware of it or not, since the government's brief didn't mention it either. Shouldn't he be given the opportunity to say that his client comes within J.E. and meets the standards of J.E.? He never had that chance. You mean that he doesn't come within J.E.? Well, that he comes within the standard of a specific, that there's a specific reason why he would be targeted, which was the new law, the J.E. And he had briefed everything under the old law. Briefed everything. Well, it's not really a new law. It's a case analyzing the law as it exists. And, in fact, the J.E. decision adopts all the same arguments that are raised in the INX motion in this case. Well, it's the tradition of the common law. All of the more creative we get, the more we say it's always been this way. And that's how you write decisions. Well, what they're looking at. Discovering the law the way it always was. Well, what they were looking at in particular was the regulations that required it to be conduct that's intentionally inflicted upon the individual. Look, I don't know if you're getting what's on my mind, and I want to give you a fair chance to address it. Usually, if new law comes down and it is likely to be outcome determinative and it affects the case, if it's just legal, we'll issue an order telling the lawyers to be prepared to address it at oral argument or to submit simultaneous letter briefs or something like that. One way or another, give them a fair chance to address it. If it's likely to affect factual development, then ordinarily we'd remand so that the facts can be developed in light of this new case that's come down. The Supreme Court does that all the time. They issue a decision, and then they issue a whole bunch of summary orders vacating circuit court decisions so that things can be reconsidered in light of the decision they just issued. It's just that's the routine, and I'm wondering whether that routine should be applied to J.E. and this fellow, Theogene. Well, I guess the question would be, is that routine constitutional as well? The idea of the routine is to give, is, okay, now people have notice. I guess they have notice of J.E. when it's published. Now we've got to make sure they have a fair opportunity to be heard. If it's factual, they need a fair opportunity to develop facts. And if it's legal, a fair opportunity to argue. At J.E., it looks as though there might be a factual element. So I'm wondering why due process doesn't require a remand so that he can develop facts. Because this routine of advising people doesn't, isn't that, isn't that not really constitutionally compelled? Well, actually, notice and an opportunity to be heard, that's what we mean by due process. And he had notice and an opportunity to be heard. When did he have an opportunity? What he wants to be heard on, what he wants to develop evidence on, is, okay, the reason Haiti's prisons are bad is not that the regime is a house of torture, it's that it's poor. Okay. But I'm special because I was in the American military, and they reserve special beatings for members of the U.S. military. Now, that seems factual to me. Maybe it isn't. Maybe I'm mistaken here. Why doesn't he need an opportunity to make a record on that? Okay. So first of all, Your Honor. I may be misunderstanding this. You know the case much better than I do. Because the decision in J.E. actually is adopting the very same arguments that were made in the Inez's motion in this case. So he had notice of those arguments, and he never responded at all to the Inez's motion for reconsideration, which are the same arguments that eventually became the decision in matter of J.E. So he had that opportunity. He could have responded to those very same arguments in this case, even without having J.E. The arguments themselves were the reason why ultimately J.E. was decided the way it is. The second point has to do with the issue having to do with his prior military service possibly making him distinguishable from the case in matter of J.E. And in the decision in this case, the Board actually addresses the prior military service aspect of this case. It doesn't just say, okay, we've got J.E., and we must follow it, and your case is completely analogous. It addressed the issue with regard to military service. In fact, that there is just insufficient evidence in this case and in the record to establish that he would be singled out and that it was more likely than not, since that's the evidentiary standard. And that's something that he had an incentive to have offered evidence on when he originally appealed the immigration judge's denial of convention against torture relief. I mean, his incentive to put that evidence in the record existed all along, not just now that matter of J.E. is out there. That incentive existed all along for him, and he simply failed to put that information and evidence into the record, and the Board made that finding itself in the decision in this case. And then finally, nowhere in the briefs in this case has that been a point that's made. There's no point in the brief where he says I'm distinguishable from J.E. because I have this prior military service, and that makes me different, and for that reason, I should have had an opportunity for an additional opportunity to be heard on how I was different than the conditions that were at issue in matter of J.E. So for those reasons, I don't really think that we have a situation where we have a due process violation. In fact, I actually have to again suggest that there might be a problem with jurisdiction over this issue as well. And the reason why I raise that issue now is because last week this Court in Noriega Lopez found that issues going to the Board's power and issues that go to constitutional aspects of the case, once it's been established the person is an alien and has been convicted of an aggravated felony, that you can't reach those issues on a petition for review. And I only raise that now because it was just decided last week, and I haven't had to. Have you heard of Rule 28J? Yes, Your Honor. It's a new case that you need to bring to our attention. You file a letter under Rule 28J and let us know about it in advance of the argument. Yes, Your Honor. I'm aware of it. How come you didn't comply with it? 28J, but I'm also aware that this Court has a rule that very recent decisions can be offered at oral argument, and it was cited. It was last week. You could have certainly filed a letter. Many other counsel do. I find it interesting how the INS requires these poor non-English-speaking petitioners to follow every technical, detailed rule, but doesn't seem to want to comply with those rules when it appears in front of us. Well, I just wanted to point that out to the Court so that the Court is aware of the possible impact. Could you file a letter? I will, Your Honor. I only have a few seconds left, but can I have leave to address the issue with regard to nationality? Your time has run. Okay. Thank you, Your Honor. Thank you, counsel. Theogene v. Ashcroft is submitted.
judges: Kleinfeld, Wardlaw, Pogue